IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANTHONY MICHAEL SPEARS                                                           PLAINTIFF

        v.                    Civil No. 08-5203

SHERIFF KEITH FERGUSON;
CORPORAL BECKER; DEPUTY
GRANT; CAPTAIN HUNTER
PETRAY, CORPORAL LOCKHART;
LIEUTENANT CARTER; and
DEPUTY ARHANGELSKY                                            DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The Plaintiff, Anthony Michael Spears (hereinafter Spears), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Spears is currently incarcerated at the Arkansas Department of Correction. In this action, Spears contends his constitutional rights were violated while he was incarcerated in the Benton County Detention Center from October 3, 2007, to March of 2009.[1] Specifically, he contends he was subjected to unconstitutional conditions of confinement and to the imposition of group punishment.

Defendants filed a summary judgment motion (Doc. 21). To assist Spears in responding to the summary judgment motion, a questionnaire was propounded (Doc. 26) by the Court. Spears filed a timely response to the questionnaire (Doc. 27). The summary judgment motion is before the undersigned for issuance of this report and recommendation.

---

[1] The summary judgment record does not contain the exact date of Plaintiff's transfer to the Arkansas Department of Correction. However, a change of address was entered in this case on March 19, 2009.

## Background

Spears was booked into the Benton County Detention Center (BCDC) on October 3, 2007, on a charge of forgery in the second degree and on a parole violation hold. *Plaintiff's Response* (Doc. 27)(hereinafter *Plff's Resp.*) at ¶ 1.

On August 17, 2008, he was given recreation at 11:40. *Id.* at ¶ 3. That same day, Spears submitted a grievance complaining that several inmates had just flooded E-Pod but his room was dry and he had nothing to do with the flooding. *Id.* at ¶ 4(A). He stated that Deputy Grant turned all of the water off as "group punishment." *Id.* at ¶ 4(B). When Corporal Baker came in, Spears stated he showed Baker that his room was still dry and asked if Baker would sign the grievance to show Spears had nothing to do with the flooding. *Plff's Resp.* at ¶ 4(C). Spears complained that Baker replied, "I'll not sign a damn thing for you" and that the whole pod would not be able to have any water until the next day. *Id.* at ¶ 4(D). Captain Petray responded, "We are not going to tolerate flooding of the pod." *Id.*

On August 18th at 6:00 p.m. (1800), pod E-104 was flooded. *Plff's Resp.* at ¶ 5(A). The pod and showers were cleaned and the closets were stocked. *Id.* However, Spears qualifies this by asserting it was only the day room of the pod, the closets, and the showers that were cleaned. *Id.* at ¶ 5(B). He maintains the cells were not cleaned. *Id.* Spears asserts he always ate his meals in his cell. *Plff's Resp.* at ¶ 6.

Spears was given recreation at 9:07 a.m. on August 18th. *Plff's Resp.* at ¶ 8. At 10:30 p.m. (2230) the pod E-104 was again flooded. *Id.* at ¶ 7. Defendants became aware of the flooding when Inmate Kahle called over the intercom advising that it sounded like someone was flooding their cell in pod E-104. *Defendants' Exhibit* 4 at page 6; *Plff's Resp.* at ¶ 9 (Without knowledge to agree or

disagree). The control room officers could see water was coming down both stair cases. *Id.* The pod was cleaned, closets were stocked, and showers were cleaned. *Id.* at ¶ 7.

On August 18th, Spears submitted a grievance complaining that after mats were given to them, other inmates flooded their cells and that the sewer water and waste was nearly two inches deep in his cell. *Defts' Ex.* 3 (Doc. 23-6) at page 4; *Plff's Resp.* at ¶ 10 (no document dated August 18th in the exhibit 3 I received). Spears stated that Corporal Becker turned the water off for everyone and told them they would have to clean up during recreation. *Id.* Spears complained that Becker subjected him to cruel and unusual punishment for turning off the water for everyone. *Id.* Petray responded, "We will not tolerate flooding of the pod." *Id.*

On August 19th, at 3:58 a.m. (0358), Inmate Branson flooded his cell. *Defts' Ex.* 4 at ¶ 12; *Plff's Resp.* at ¶ 12 ("I do not know if it was him exactly). On August 19th at 1:01 p.m. (1301), Spears was given recreation and a shower. *Plff's Resp.* at ¶ 13. At 3:55 p.m. (1555), E104 water was turned off in the water closets. *Defts' Ex.* 4; *Plff's Resp.* at ¶ 14(A)("I do not know of anyone threatening Cpl. Lockhart about flooding."). According to Lockhart, inmates were threatening to flood the pod. *Defts' Ex.* 4. The water was turned on at 5:00 p.m. (1700) but was turned off at 5:05 p.m. (1705). *Id.* The water was turned on at 8:10 p.m. (2010) and turned off at 8:30 p.m. (2030). *Id.* The water was turned on at 10:25 p.m. (2225) and back off at 10:45 p.m. (2245). *Id.*

On August 19th, Spears submitted a grievance stating that "right now is shift change at 3:30 p.m. or 4:00 p.m. The last few days I have wrote grievance because other inmates have flooded and during this time I was "as were" all inmates in E-pod 104, punished as a group by all of our water being shut off." *Plff's Resp.* at ¶ 11(A). He complained that Corporal Lockhart, along with Deputy

Arhangelsky, shut the water off for three days now and he had been unlawfully punished because of other inmates. *Id.* Petray responded, "We will not tolerate flooding of the pod." *Id.*

There were three separate floods in the pod between August 17th and August 19th. *Plff's Resp.* at ¶ 11(C). After each flood, the pod was cleaned. *Id.* at ¶ 11(D).

Between August 17th and August 18th, the water was turned off for periods of time. *Plff's Resp.* at ¶ 14(B). However, it was turned back on for short periods of time to give inmates the opportunity to flush their toilet and get drinking water. *Id.*

Spears was asked to indicate the longest period of time the water was off. He responded: "1555-1700 [3:55 p.m. to 5:00 p.m.]--2245 [10:45 p.m.]-not turned back on for 24 hours." *Plff's Resp.* at ¶ 14(C).

Spears was asked to indicate how long his cell remained wet during these three days before the water was cleaned up. He responded that his cell was wet until the next recreation hour. *Plff's Resp.* at ¶ 11(B). He was then asked what the longest period of time was that his cell was flooded. He responded: "I never flooded my cell it had sewage for 24 hours on the floor befor[e]I was allowed to clean it." *Id.* at ¶ 14(D).

Spears was asked to describe in detail the conditions in his cell when it was flooded. He responded: "I do not have anything on August 18th in my exhibits and can not clearly remember but on the floor was excr[e]ment (waste) and the water & paper from the toilets [was] floating around. Once or twice we was made to eat in the cells like this." *Plff's Resp.* at ¶ 14(E).

On September 11th, Spears complained that he was, once again, being punished for other inmate's actions. *Defts' Ex.* 3 (Doc. 23-6) at page 15; *Plff's Resp.* at ¶ 15 (I can not verify this because there is no Aug. or Sep. in Exhibit 3). He complained that other inmates were making noise

and instead of finding out who was responsible, Sgt. Torres punished everyone by turning off the water. *Id.* Petray responded, "You are not being punished. The water was turned off for a reason." *Id.*

Spears submitted another grievance on October 1st complaining that the inmates had been told to close the doors so that the phones could be turned on and everyone but one or two cells had their doors closed. *Plff's Resp.* at ¶ 16. He stated that the rest of the pod was punished because of 1 or 2 people and that it was "group punishment and illegal." *Id.* Petray responded, "the doors will be closed."
*Id.*

Spears never spoke to, or communicated with, Sheriff Ferguson about his complaints of "group punishment." *Plff's Resp.* at ¶ 17. However, Spears states he submitted several requests to speak with Sheriff Ferguson. *Id.* Spears indicates he never received the requests back and they were not placed in his file. *Id.*

Spears was asked how Sheriff Ferguson violated his constitutional rights. Spears responded that he couldn't say Sheriff Ferguson was "responsible for anything or that he violated my constitutional rights." *Plff's Resp.* at ¶ 17.

## **Summary Judgment Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient

showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a . . . verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

As mentioned above, Defendants have now moved for summary judgment. First, Defendants argue Plaintiff was not subjected to unconstitutional conditions of confinement. Second, they argue Plaintiff suffered no actual physical injury as a result of the conditions he was confined under. Third, they argue that there is no showing that Sheriff Ferguson or Captain Petray were personally involved in the alleged constitutional violations. Finally, Defendants maintain they are entitled to the protections afforded by qualified immunity.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. See Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. See also Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to claims brought by pretrial detainees that prison officials failed to provide adequate food, clothing, shelter, etc.). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004)(citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." Revels, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." Revels, 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Keeping these principles in mind, we turn to an examination of the conditions of confinement alleged to exist in this case. Spears claims center on the events of August 17th to August 19. During that time, the cell block he was in was flooded as a result of conduct by the inmates on three separate occasions. During the first flood on August 17th, Spears kept his cell dry. *Plff's Resp.* at ¶ 4(A) &

¶ 4(C). Following the flood, the water was shut off to the whole pod and only turned on for short periods of time for the inmates to flush their commodes and get drinking water. *Id.* at ¶ 4(B). Spears' cell remained dry until some time on the 18th. *Id.* at ¶ 5(C)(I do not remember what time it was flooded). Spears had recreation at 9:07 a.m. on the 18th *Id.* at ¶ 8. During the recreation hour, Spears indicates inmates were allowed to clean their cells. *Id.* at ¶ 11(B).

On August 18th, the pod was flooded at 6 p.m. (1800). *Plff's Resp.* at ¶ 5(A). While the pod was cleaned right after the flood, Spears maintains the cleaning was limited to the day room, closets, and showers. *Id.* at ¶ 5(A) & ¶ 5(B). At 6:30 p.m., the water was turned off to the pod. *Id.* at ¶ 6.

That same day, the pod was flooded at 10:30 p.m. (2230). *Plff's Resp.* at ¶ 7 & ¶ 9. The pod was cleaned right after the flood. *Id.* Spears indicates that his cell remained wet following these floods until the next recreation hour. *Id.* at ¶ 11(B).

On August 19th, at 3:58 a.m. (0358) the pod was flooded. *Defts' Ex.* 4; *Plff's Resp.* at ¶ 12. Spears was given recreation and a shower at 1:01 p.m. (1301). *Plff's Resp.* at ¶ 13. At 3:55 p.m. the water was turned off in the water closets. *Defts' Ex.* 4; *Plff's Resp.* at ¶ 14(A).

Although the water was turned off each of these days, it was turned back on at intervals. *Plff's Resp.* at ¶ 14 (B). Spears maintains the longest period of time his cell was flooded was twenty-four hours. *Plff's Resp.* at ¶ 14(D).

In <u>Smith v. Copeland</u>, 87 F.3d 265 (8th Cir. 1996) the Eighth Circuit noted that not every "overflowed toilet in a prison amounts to a constitutional violation." *Id.* at 268. The court noted it had found constitutional violations to exist when inmates were forced to work without protective gear in "a shower of human excrement," and had ordered prisons to provide protective gear and to warn of the dangers of working in AIDS-contaminated waste. *Id.* at 269. It had also found a

constitutional violation to exist when "an inmate was forced to endure a cell covered with filth and human waste for two full years." Id. The Eighth Circuit noted that "the length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis." Id. It stated that "[c]onditions such as a filthy cell that "may be tolerable for a few days are intolerably cruel for weeks or months." Id. In the case before it, viewed in the light most favorable to the plaintiff, the summary judgment materials showed the plaintiff was subjected to a "overflowed toilet in his cell for four days." Smith, 87 F.3d at 269. Under the totality of the circumstances, the court held the defendants entitled to judgment as a matter of law on the raw sewage claim. Id.

Examining the totality of the circumstances, we do not believe Spears' allegations rise to the level of constitutional significance. His cell remained dry on August 17th. At some point, during the morning hours of the 18th his cell was flooded. However, he was allowed to clean his cell at 9:07 a.m. that day. The cell would have remained clean until the next flood which occurred at 6:00 p.m. on August 18th. His cell was then flooded from 6:00 p.m. on the 18th until he was allowed to clean up his cell when he had recreation at 1:01 p.m. on the 19th. Taking the facts in the light most favorable to Spears, he was exposed to a flooded cell for a maximum of nineteen hours. We find no genuine issues of fact exist as to whether Defendants were deliberately indifferent to the risk of harm to Spears posed by the flood in the pod.

Spears also maintains the Defendants engaged in unconstitutional "group punishment" when they: (1) shut the water off on the days in August in response to the floods; (2) shut the water off on September 11th in response to excessive noise in the pod; and (3) when on October 1st, the doors to the cells remained closed because one or two inmates failed to go to their cells as ordered. We find this argument to be without merit. Prison officials are permitted to take measures to preserve

the security and safety of the facility and it employees, to control the inmates, and to preserve the safety and security of the inmates. See e.g., Johnson v. Williams, 788 F.2d 1319 (8th Cir. 1986). The measures taken by Defendants, while they may have been disagreeable to the inmates, did not violate the Eighth Amendment. See e.g., Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989)(Eighth Amendment claim evaluated in terms of whether the conduct was "so inhumane, base or barbaric so as to shock the sensibilities."). Cf. Maxwell v. Mason, 668 F.2d 361, 363 (8th Cir. 1981)(An inmate's confinement for fourteen days without clothing or bedding in a strip cell bore "no relationship whatever to any security measure under the facts of the case and amounted to an unnecessary infliction of pain . . . such treatment was wholly inconsistent with the current minimum standards of respect for the dignity of human beings." ).

## Conclusion

For the reasons stated, I recommend that Defendants' motion for summary judgment (Doc. 21) be granted.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **12th day of February 2010.**

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE